FILED

2012 SEP 20  AM 8: 54

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY＿＿＿＿＿＿＿DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC,<br><br>　　　　　　　　　Plaintiff,<br>　vs.<br><br>JOHN DOE,<br><br>　　　　　　　　　Defendant. | CASE NO. 12cv1523-AJB(KSC)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY**<br><br>[Doc. No. 3] |

On June 28, 2012, plaintiff filed an Ex Parte Application for Leave to Take Expedited Discovery, along with supporting exhibits.  [Doc. No. 3.]  Plaintiff has not named or served a particular defendant in the action, so no opposition or reply briefs have been filed.  The Court finds plaintiff's Motion suitable for resolution on the papers.  CivLR 7.1(d)(1).  For the reasons outlined below, plaintiff's Ex Parte Application is DENIED.

## *BACKGROUND*

Plaintiff AF Holdings LLC is a limited liability company and the holder of rights to various copyrighted works, including an adult video entitled "Popular Demand" (the "Video").  On June 20, 2012, plaintiff filed a Complaint against a single Doe defendant identified by an Internet Protocol address ("IP address") of 72.207.23.163.  An IP address is a number assigned to a device, such as a computer, that connects to the internet. [Doc. No. 1, Compl., at p. 1-2.]

///

12cv1522-LAB(KSC)

1    The Complaint includes causes of action against the defendant for copyright infringement,

2  contributory negligence, and negligence. [Doc. No. 1, Compl., at pp. 2-3, 7-10.] Plaintiff alleges that

3  its agents use a computer program to detect and monitor internet-based infringement activity and were

4  able to observe unlawful reproduction and distribution of the copyrighted Video over IP address

5  98.176.216.109. [Doc. No. 1, Compl., at p. 2, 6.] However, plaintiff claims it cannot determine the

6  defendant's actual identity without limited expedited discovery. [Doc. No. 1, Compl., at p. 2; Doc. No.

7  3, at p. 4.]

8                          ***FACTUAL ALLEGATIONS***

9    Plaintiff alleges that defendant reproduced and distributed the copyrighted Video by acting in

10  concert with others using a "BitTorrent" file sharing method that is used to distribute data over the

11  internet. [Doc. No. 1, Compl., at 3.] BitTorrent allows individuals to use and distribute data to others

12  much more quickly than other methods. [Doc. No. 1, Compl., at 3-4.]

13    According to the Complaint, a computer program that implements a BitTorrent is known as

14  a "BitTorrent client." [Doc. No. 1, Compl., at p. 4; Doc. No. 3-1, Hansmeier Decl., at p. 4.]

15  Individuals who download and distribute a file are referred to as "peers." A group of peers is called

16  a "swarm." For popular files, a swarm can include tens of thousands of unique peers from different

17  states and countries around the world. A server that stores a list of peers in a swarm is known as a

18  "tracker." [Doc. No. 1, Compl., at 4-5; Doc. No. 3-1, Hansmeier Decl., at p. 4.] The "seeder" is a

19  person who possesses a complete digital reproduction of a file, such as the Video, and elects to share

20  it with other internet users. The complete file is called a "seed." [Doc. No. 3-1, Hansmeier Decl., at

21  p. 4.]

22    A BitTorrent begins when the initial seeder creates a "torrent" file containing instructions for

23  how to find the seed and uploads the file on a "torrent-indexing site." [Doc. No. 3-1, Hansmeier Decl.,

24  at pp. 4-5.] A user then locates the torrent file. This file contains information about the files to be

25  shared and about the tracker, the computer that coordinates the file distribution. "[T]he user loads the

26  torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the

27  torrent file. The tracker responds with a list of peers and the BitTorrent client connects to those peers

28  to begin downloading data from and distributing data to the other peers in the swarm. When the

1  download is complete, the BitTorrent client continues distributing data to other peers in the swarm

2  until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same."

3  [Doc. No. 1, Compl., at 4; Doc. No. 3-1, Hansmeier Decl., at pp. 4-5.]

4     "Normal commercial computers do not come pre-loaded with the BitTorrent software.  Each

5  peer within a swarm must have separately installed on their respective computers special software that

6  allows peer-to-peer sharing of files by way of the internet." [Doc. No. 3-1, Hansmeier Decl., at p. 4.]

7  In addition, peers do not participate in the BitTorrent process anonymously, because they must

8  broadcast their IP address before they can receive data.  [Doc. No. 1, Compl., at p. 5.] Participants in

9  a BitTorrent can be identified by an IP address. [Doc. No. 3-1, Hansmeier Decl., at p. 8.]  According

10  to plaintiff, however, it is difficult to combat copyright infringement by peers, because the BitTorrent

11  process is decentralized.  As a result, there is no primary target or central server to enjoin from

12  unlawfully distributing copyrighted content. [Doc. No. 1, Compl., at p. 5; Doc. No. 3-1, Hansmeier

13  Decl., at p. 9.]

14     Plaintiff alleges that defendant, using IP address 72.207.23.163, was part of a group of

15  "BitTorrent users or peers in a single swarm." [Doc. No. 1, Compl., at p. 6.] It is further alleged that

16  defendant intentionally downloaded a torrent file particular to the subject Video, purposefully loaded

17  that torrent file into a BitTorrent client, entered a BitTorrent swarm particular to plaintiff's Video, and

18  reproduced and distributed the Video to numerous third parties. [Doc. No. 1, Compl., at p. 6.] Plaintiff

19  allegedly detected defendant's unlawful download through an investigative service "on 2012-04-24

20  at 05:51:26 (UTC)."  [Doc. No. 1, Compl., at p. 6.]  In addition, plaintiff claims its investigator

21  detected a "Hash Tag," which is a unique algorithmic identifier that is common to all of the

22  participants in the swarm. [Doc. No. 1, Compl., at p. 7.]

23  ### *DISCUSSION*

24     Plaintiff's Ex Parte Application for Leave to Take Expedited Discovery seeks an order

25  allowing it to serve a subpoena on third party Cox Communications pursuant to Federal Rule of Civil

26  Procedure 45 to obtain the name, physical address, and telephone number where IP address

27  98.176.216.109 is located.  [Doc. No. 3-3, Proposed Order, at pp. 1-3.]  In support of its Ex Parte

28  Application, plaintiff submitted the Declaration of a technician from 6881 Forensics, LLC, which is

1   an investigative service that assists owners of copyrighted works by monitoring and documenting

2   internet-based infringement activity.  The technician's Declaration explains that he uses "proprietary

3   peer-to-peer network software" to monitor "BitTorrent-based" swarms involved in unlawfully

4   distributing copyrighted works, such as the Video.  The software captures data about the activity of

5   peers in a swarm. [Doc. No. 1, Compl., at p. 6; Doc. No. 3-1, Hansmeier Decl., at p. 1, 6.]  With this

6   program, the technician can only detect, monitor, and identify peers by their IP addresses. [Doc. No.

7   3-1, Hansmeier Decl., at p. 8.]  The technician then uses a reverse look-up database that is available

8   to the public on the internet to identify the internet service provider ("ISP") for a particular IP address,

9   as well as the city, county, and state where the computer with that IP address is located. [Doc. No. 3-1,

10  Hansmeier Decl., at p. 8.]  However, without an order allowing expedited discovery from the ISP,

11  plaintiff cannot discover the name and address of the individual or entity at the IP address in question.

12  [Doc. No. 3-1, Hansmeier Decl., at p. 9.]

13          Discovery is generally not permitted without a court order before the parties have conferred

14  pursuant to Federal Rule of Civil Procedure 26(f).  Fed. R. Civ. P. 26(d)(1).  "[I]n rare cases, courts

15  have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the

16  plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins.*

17  *Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal.1999).  Courts in the Ninth Circuit generally

18  grant requests for expedited discovery when the moving party shows good cause. *Semitool, Inc. v.*

19  *Tokyo Elec. Am., Inc.*, 208 F.R.D. 273, 275-276 (N.D. Cal. 2002).

20          "[W]here the identity of alleged defendants will not be known prior to the filing of a

21  complaint[,] . . . the plaintiff should be given an opportunity through discovery to identify the unknown

22  defendants, unless it is clear that discovery would not uncover the identities, or that the complaint

23  would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  "[T]o

24  prevent abuse of this extraordinary application of the discovery process and to ensure that the plaintiff

25  has standing to pursue an action against defendant," plaintiff must also "make some showing" that an

26  act giving rise to liability actually occurred and that the discovery is aimed at identifying the party who

27  allegedly committed the act. *Columbia*, 185 F.R.D. at 579-580.

28  / / /

1    District Courts have applied a three-factor test when considering whether there is good cause

2    for expedited discovery to determine the identity of certain defendants. *Id.* at 578-580. First, the

3    plaintiff should "identify the missing party with sufficient specificity such that the Court can determine

4    that defendant is a real person or entity who could be sued in federal court." *Id.* at 578. In recent

5    cases, District Courts have determined that a plaintiff can identify a Doe defendant with sufficient

6    specificity by providing a unique IP address assigned to an individual on the day of the allegedly

7    infringing conduct, and by using "geolocation technology" to trace the IP address to a physical point

8    of origin which would subject the person to the Court's jurisdiction. *See, e.g., Openmind Solutions,*

9    *Inc. v. Does 1–39,* No. C 11-3311 MEJ, 2011 WL 4715200, at 2 (N.D.Cal. Oct. 7, 2011); *Pink Lotus*

10   *Entm't, LLC v. Does 1–46,* No. C–11–02263 HRL 2011 WL 2470986, at 3 (N.D.Cal. June 21, 2011).

11   "A district court's decision to grant discovery to determine jurisdictional facts is a matter of

12   discretion." *Columbia,* 185 F.R.D. at 578.

13   As noted above, the forensic technician's Declaration submitted in support of plaintiff's Ex

14   Parte Application states he is able to use a reverse look-up database available to the public on the

15   internet to identify the internet service provider ("ISP") for a particular IP address, as well as the city

16   or county, and state where the computer assigned with that IP address is located. [Doc. No. 3-1,

17   Hansmeier Decl., at p. 8.] However, the technician's Declaration only identifies Cox Communications

18   as the ISP for the IP address in question. The technician's Declaration does not state he used the

19   reverse look-up database and/or some other geolocation technology to determine the city, county, or

20   state where this particular IP address is located. [Doc. No. 1, Compl., at p. 3; Doc. No. 3-1, Hansmeier

21   Decl., at pp. 8-10.] There is also nothing in the technician's Declaration to indicate whether an IP

22   address associated with Cox Communications is necessarily located within this specific District or

23   even within the State of California. As a result, there is no evidence before the Court showing

24   defendant is a real person or entity who could be subject to the Court's jurisdiction. Therefore,

25   plaintiff has not met its burden of providing enough evidence to identify defendant with sufficient

26   specificity.

27   Second, the movant must describe "all previous steps taken to locate the elusive defendant."

28   *Columbia,* 184 F.R.D. at 579. "This element is aimed at ensuring that plaintiffs make a good faith

1  effort to comply with the requirements of service of process and specifically identifying defendants."

2  *Id.* As outlined above, the technician's Declaration indicates he is able to take steps to identify the city

3  or county and state where the allegedly infringing IP address is located.  However, the Declaration

4  does not indicate these steps were taken in this case.  Nor does the Declaration explain whether there

5  is some reason why these steps could not be taken to obtain additional information about the location

6  of the subject IP address.  As a result, plaintiff has not met its burden to show it has made a good faith

7  effort to identify defendant with sufficient specificity.

8      Third, plaintiff should establish that its suit against the defendant could withstand a motion to

9  dismiss.  *Id.*  Under Federal Rule of Civil Procedure 12(b)(2), a case can be dismissed for lack of

10  personal jurisdiction over a defendant.  Fed.R.Civ.P. 12(b)(2).  Federal Rule of Civil Procedure

11  12(b)(3) allows a case to be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3).

12      A District Court need not accept the pleadings as true and may consider facts outside of the

13  pleadings when considering a motion to dismiss for improper venue pursuant to Rule 12(b)(3). *Doe*

14  *1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  Once a defendant challenges the propriety of

15  venue in a given court, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label*

16  *Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.1979).  When a District Court determines

17  venue is improper, it must either dismiss the action or transfer it to another court in which the case

18  could have been brought "if it is in the interests of justice." 28 U.S.C. § 1406(a).  Dismissal would

19  therefore be appropriate when no alternate district can be identified where venue would be proper.

20      In a copyright infringement action, venue is proper "in the district in which the defendant

21  . . . resides or may be found." 28 U.S.C. § 1400(a).  The Ninth Circuit has interpreted this provision

22  "to allow venue in any judicial district where, if treated as a separate state, the defendant would be

23  subject to personal jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126

24  (9th Cir. 2010).  "In order to establish personal jurisdiction over a defendant, that defendant must be

25  found to have 'minimum contacts' with the forum state." *Wood v. Santa Barbara Chamber of*

26  *Commerce, Inc.*, 705 F.2d 1515, 1521-1522 (9th Cir. 1983), citing *International Shoe Co. v.*

27  *Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The party asserting jurisdiction has the

28  burden of proof once the issue is raised." *Id.*

1    The Ninth Circuit applies "a three-prong test to determine whether a party has sufficient
2    minimum contacts to be susceptible to specific personal jurisdiction: (1) The non-resident defendant
3    must purposefully direct his activities or consummate some transaction with the forum or resident
4    thereof; or perform some act by which he purposefully avails himself of the privilege of conducting
5    activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must
6    be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise
7    of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Brayton-*
8    *Purcell*, 606 F.3d at 1128.  Where the underlying action is based on copyright infringement, the first
9    element of this analysis is satisfied if "the defendant allegedly must have (1) committed an intentional
10   act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be
11   suffered in the forum state." *Id.*

12   Here, the Complaint alleges that venue is proper "because defendant resides in this District,
13   may be found in this District, or a substantial part of the events giving rise to the claims in this action
14   occurred within this District." [Doc. No. 1, Compl., at p. 3.] As outlined above, the technician's
15   Declaration submitted in support of plaintiff's Ex Parte Application states he is able to use a reverse
16   look-up database and/or geolocation technology to determine the ISP provider for a particular IP
17   address, as well as the city, county, or state were a particular IP address is located.  However, the
18   technician's Declaration only provides an IP address and the ISP, Cox Communications.  The
19   Declaration does not state that steps were taken to determine the physical location of the IP address.
20   Nor is it clear from the information provided in the Declaration whether an IP address associated with
21   Cox Communication is necessarily located within this District or even in the State of California.  In
22   addition, no facts are alleged or included in the Declaration to indicate a substantial part of the events
23   giving rise to the claims in this action occurred within this District.  It is therefore not possible to
24   determine whether venue is proper in this Court.

25   Although the Complaint does allege that this Court has personal jurisdiction over the defendant
26   because plaintiff "used geolocation technology to trace the IP address . . . to a point of origin within
27   the State of California," [Doc. No. 1, Compl., at p. 3] no supporting facts on this point were included
28   in the Declaration submitted in support of plaintiff's Ex Parte Application.  In addition, the Complaint

1   does not allege facts indicating venue is proper in this Court because defendant would be subject to

2   personal jurisdiction here.   Neither the Complaint nor the Declaration submitted in support of

3   plaintiff's Ex Parte Application allege or include specific facts suggesting that the unnamed

4   defendant's alleged infringement or negligence arose out of forum-related activities or that defendant's

5   unlawful activities were directed to or consummated within this judicial District or even in the State

6   of California. Therefore, without more, this Court is not convinced plaintiff could overcome a motion

7   to dismiss on the issues of venue and/or personal jurisdiction.

8                                          ***Conclusion***

9           Based on the foregoing, plaintiff has not shown good cause for an order allowing it to serve

10  third party Cox Communications with a subpoena pursuant to Federal Rule of Civil Procedure 45 on

11  an expedited basis to obtain the name, physical address, and telephone number where IP address

12  72.207.23.163 is located.   Plaintiff has not identified defendant with sufficient specificity.  Nor has

13  plaintiff shown it made a good faith effort to specifically identify defendant.  In addition, the facts

14  alleged in the Complaint and the evidence presented in support of the Ex Parte Application are not

15  enough to show plaintiff could survive a motion to dismiss for improper venue or lack of personal

16  jurisdiction. Therefore, IT IS HEREBY ORDERED THAT plaintiff's Ex Parte Application for Leave

17  to Take Expedited Discovery is DENIED.

18          IT IS SO ORDERED.

19  Date:  _Aug. 19_, 2012

20

21                                                      KAREN S. CRAWFORD
                                                        United States Magistrate Judge
22

23

24

25

26

27

28